## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Joei Alexander Jordan,

                 Petitioner,

v.

Mike Brown,

                 Respondent.

_____/

Case No. 21-11680

Judith E. Levy
United States District Judge

Mag. Anthony P. Patti

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED INFORMA PAUPERIS ON APPEAL

On July 19, 2021, Petitioner Joei Alexander Jordan, who is in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) On December 13, 2021, Petitioner filed a supplemental brief. (ECF No. 5.) On April 27, 2022, Respondent responded. (ECF No. 9.) Petitioner replied. (ECF No. 13.) Petitioner challenges his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and conspiracy to commit second-degree home invasion, Mich. Comp. Laws §§ 750.110a(3) and

750.157a. For the reasons set forth below, the Petition for a writ of habeas corpus is denied. The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## I.   Background

On January 20, 2015, Petitioner pleaded guilty to first-degree home invasion and second-degree home invasion. (ECF No. 5, PageID.17.) On January 27, 2015, a jury convicted Petitioner of first-degree felony murder, first-degree home invasion, and conspiracy to commit first-degree home invasion. (*Id.*) Petitioner was sentenced to life for first-degree felony murder; 95 months to 20 years for the first-degree home invasion and conspiracy to commit first-degree home invasion counts; and 15 years for second-degree home invasion, all to run concurrent to each other. (*Id.*) The Michigan Court of Appeals affirmed his conviction on appeal. *People v. Jordan*, 2016 WL 5930006 (Mich. Ct. App. Oct. 11, 2016), *lv. den.* 501 Mich. 860 (Mich. 2017).

This Court adopts the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant

to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009) (finding that "facts relied upon by the Michigan Court of Appeals . . . are presumed correct on habeas review"). Petitioner does not challenge these facts. (*See* ECF No. 5, PageID.18.) According to the Michigan Court of Appeals

> [o]n the night of July 23, 2013, [D]efendant, Shaquille Jones, and Dajeon Franklin went to Ann Arbor. While walking around Ann Arbor, the men passed two other men on the street, and [D]efendant asked Franklin if he had "that," meaning Franklin's .40–caliber Glock handgun. According to [D]efendant's trial testimony, Franklin gave him a look as if to say, "Do I look stupid?"

> Defendant entered 210 North Ingalls Street with the aid of the two others and stole a MacBook, purse, and wallet while a woman was upstairs in a bed in the house and while a light in the living room was illuminated. Defendant then decided to enter 220 North Ingalls Street. Defendant entered the house through a window and tried to steal a television, but he exited the home when he heard voices. The men observed people inside the home when they walked away from the house. Defendant testified that he was not satisfied with what they had stolen and wanted to go back to 220 North Ingalls. They returned again to 220 North Ingalls, and [D]efendant entered a window. Thereafter, Jones and Franklin entered through a door. The three men went into the basement of the residence, and when they heard voices, they went into a pantry to hide.

> After the voices stopped, [D]efendant, Jones, and Franklin entered a basement bedroom, which was dark. The victim, Paul DeWolf, slowly stood up from his bed and walked toward the door. Defendant observed Franklin holding his gun in a firing position as the victim approached. Defendant then observed Franklin pull the gun back and hit the victim with the gun. The gun discharged. Defendant, Jones, and Franklin ran out of the residence. The victim died from the gunshot wound. Police were able to identify and locate [D]efendant after investigating the sale of the MacBook stolen from 210 North Ingalls.
>
> Immediately before trial, [D]efendant pleaded guilty to first-degree home invasion and conspiracy to commit second-degree home invasion with respect to [D]efendant's involvement with 210 North Ingalls. A jury convicted [D]efendant as stated above for his actions at 220 North Ingalls, and [D]efendant now appeals.

*Jordan*, 2016 WL 5930006, at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal. *Jordan*, 501 Mich. at 860.

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Jordan,* No. 13-1836-FC (Washtenaw Cnty. Cir. Ct. Apr. 30, 2019). (ECF No. 10-20). The Michigan Court of Appeals denied Petitioner leave to appeal. *People v. Jordan,* No.

4

351040 (Mich. Ct. App. Feb. 28, 2020); *reconsideration den.* No. 351040 (Mich. Ct. App. Apr. 1, 2020); *lv. den.* 507 Mich. 904 (2021).[1]

Petitioner seeks a writ of habeas corpus on the following two grounds:

> I. Petitioner's due process rights were violated by the submission of the felony murder charge against him to the jury when no rational factfinder could have found the elements of the charge beyond a reasonable doubt ["Claim One"].

> II. The confusing jury instructions and the lower court's failure to instruct the jury that the Defendant had to have known his co-defendant carried a weapon into the home invaded and had specific intent violated petitioner's due process rights ["Claim Two"].

(ECF No. 5, PageID.14.)

---

[1] On or about March 20, 2024, Petitioner also filed a motion to stay the habeas case and hold the Petition in abeyance so that he could return to the state courts and while he petitioned the Michigan Supreme Court to raise a separate issue: to expand the holdings of *Miller v. Alabama*, 567 U.S. 460 (2012) and *People v. Parks*, 510 Mich. 225 (Mich. 2022). That case challenges mandatory life without parole as applied to 20-year-olds. (ECF No. 14.) However, on February 19, 2025, the Court denied Petitioner's motion to stay and hold in abeyance, reasoning that "it is unnecessary to stay the case." (ECF No. 15, PageID.1379.) The Court noted that depending on the outcome in a Michigan Supreme Court case raising the same issue, "Petitioner may have . . . remedies in state court to consider." (*Id.*)

5

Respondent asserts that the petition is barred by the statute of limitations. (ECF No. 9, PageID.58.) In addition, Respondent opposes the first claim on the basis that "the state courts' rejections of [Petitioner's] claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts." (*Id.* at PageID.106.) Respondent opposes the second claim on the basis that Petitioner procedurally defaulted on the jury instruction claim and the jury instructions were proper. (*Id.* at PageID.88, 93.)

## II.    Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

6

the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by t[he Supreme] Court on a question of law or if the state court decides a case differently than t[he Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of t[he Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas

7

relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III.  Analysis

### A.  Timeliness

The Court first addresses the argument that the Petition is untimely. Respondent asserts that the Petition should be dismissed because it is barred by the one-year statute of limitations for filing habeas petitions. (ECF No. 9, PageID.70.) The Court disagrees.

28 U.S.C. § 2244(d) imposes a one-year statute of limitations upon petitions for habeas relief:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed

> if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).

Although not jurisdictional, the AEDPA's one-year limitations period "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *See Akrawi v. Booker,* 572 F.3d 252, 260 (6th Cir. 2009). "A federal court will dismiss a case where a petitioner for a writ of habeas corpus does not comply with the one year statute of limitations." *Grayson v. Grayson,* 185 F. Supp. 2d 747, 749 (E.D. Mich. 2002) (citing *Thomas v. Straub*, 10 F.Supp.2d 834, 835 (E.D. Mich. 1998)).

On October 11, 2016, the state appeals court affirmed Petitioner's conviction. *Jordan*, 2016 WL 5930006, at *6. On September 12, 2017, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *Jordan*, 501 Mich. at 860. However, the one-year statute of

9

limitations under 28 U.S.C. § 2244(d)(1) did not start running on that day:

> Where a state prisoner sought direct review of his conviction in the state's highest court but did not file a petition for certiorari with the U.S. Supreme Court, the one year limitation period for seeking habeas review under 28 U.S.C. § 2244(d)(1) begins to run not on the date that the state court entered judgment against the prisoner, but on the date that the 90 day time period for seeking certiorari with the U.S. Supreme Court expired.

*Payne v. Romanowski*, No. 12-12874, 2013 WL 388736, at *2 (E.D. Mich. Jan. 31, 2013) (citing *Jimenez v. Quarterman*, 555 U.S. 113, 119–20 (2009)). Petitioner's judgment became final 90 days after September 12, 2017, which was on December 11, 2017, when he failed to file a petition for a writ of certiorari with the U.S. Supreme Court. *See Thomas,* 10 F. Supp. 2d at 835.

Petitioner filed his post-conviction motion for relief from judgment with the state trial court on August 23, 2018, after 255 days elapsed under the statute of limitations. (ECF No. 9, PageID.72.) 28 U.S.C. § 2244(d)(2) expressly provides that the time during which a properly filed application for state post-conviction relief or other collateral review is pending shall not be counted towards the period of limitations contained in the statute. *See McClendon v. Sherman,* 329 F.3d 490, 493–94 (6th Cir.

10

2003). A post-conviction application remains pending in the state courts, for purposes of § 2244(d)(2), until it "has achieved final resolution through the state's post-conviction procedures." *Carey v. Safford,* 536 U.S. 214, 220 (2002). The tolling of the AEDPA's one year statute of limitations ended in this case on March 31, 2021, when the Michigan Supreme Court denied Petitioner's application for leave to appeal the denial of his motion for relief from judgment. *Jordan*, 507 Mich. at 904; *see Hudson v. Jones*, 35 F. Supp. 2d 986, 988-89 (E.D. Mich. 1999). Unlike on direct review, the limitations period would not be tolled further under § 2244(d)(2) during the time during which Petitioner could seek certiorari review of the denial of his state post-conviction motion. *See Lawrence v. Florida,* 549 U.S. 327, 329 (2007). Petitioner had 110 days remaining under the limitations period after his state post-conviction proceedings ended on March 31, 2021, or until July 19, 2021, to timely file his habeas petition. Respondent concedes that Petitioner filed on July 19, 2021, but incorrectly concludes "his filing was one day past the limitations period." (ECF No. 9, PageID.72.) Contrary to Respondent's contention, Petitioner's habeas petition is timely because it was filed on the last day to timely file the Petition.

11

Respondent argues that Petitioner's application is untimely because he filed it 111 days after his post-conviction appeal was denied by the Michigan Supreme Court. In making this calculation, Respondent appears to improperly count the date that the Michigan Supreme Court denied Petitioner's post-conviction appeal on March 31, 2021.

Federal Rule of Civil Procedure 6(a)'s standards for calculating periods of time apply to § 2244(d)'s one-year statute of limitations. *Moss v. Miniard,* 62 F.4th 1002, 1009 (6th Cir. 2023)*, cert. denied,* 144 S. Ct. 1004*,* (2024). "[I]n computing any time period . . . [the Court] exclude[s] the day of the event that triggers the period." Fed. R. Civ. P. 6(a); *see also Moss,* 62 F.4th at 1009 ("[A]lthough the AEDPA limitations period is triggered on the day of finality, the clock begins to run the following day."). The statute of limitations would therefore not resume running until April 1, 2021, the day after the Michigan Supreme Court denied Petitioner's post-conviction appeal. Petitioner's application was filed on July 19, 2021, which is 110 days after the limitations period began running again. The Petition was thus timely filed.

## B.   Claim One

In his first claim, Petitioner alleges that there was insufficient evidence presented to support his conviction for first-degree felony murder on the theory of aiding and abetting because Petitioner "did not know the shooter, co-Defendant Franklin, had a gun." (ECF No. 13, PageID.1359.) He argues that therefore, the prosecution did "not establish beyond a reasonable doubt that Petitioner *intended* a shooting or that it was the natural and probable consequence of a home invasion." (*Id.* (emphasis added).) The Court disagrees.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* (quoting *Woodby v. INS.*, 385 U.S. 276, 282 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19 (emphasis in the original).

A federal habeas court may not overturn a state-court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, the Court may only overturn the state-court decision if it was "objectively unreasonable." *Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). For a federal habeas court reviewing a state-court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold "is entitled to considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed" at trial. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Under Michigan law, the elements of first-degree felony murder are:

> (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of a set of specifically enumerated felonies.

*Matthews,* 319 F.3d at 789 (citing to *People v. Carines*, 460 Mich. 750, 754 (1999)).

The underlying felony in this case was first-degree home invasion.

According to the relevant Michigan statute,

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a)   The person is armed with a dangerous weapon.
>
> (b)   Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2).

"Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon or that the dwelling be occupied." *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004) (citing *United States v. Garcia-Serrano,* 107 F. App'x 495, 496-97 (6th Cir. 2004)).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007) (citing *Carines,* 460 Mich. at 750); *see also Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003) (citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W.2d 636 (1999)).

In order to be found guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir.

1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568 (1995). "[T]he quantum of aid or advice" is not material if it had the effect of inducing the commission of the crime. *People v. Lawton,* 196 Mich. App. 341, 352 (1992).

"To be convicted of aiding and abetting, a person must either have possessed the required intent or have participated while knowing that the principal had the requisite intent," and "[s]uch intent may be inferred from circumstantial evidence." *People v. Wilson*, 196 Mich. App. 604, 614 (1992). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Turner,* 213 Mich. App. at 569. Requisite intent for aiding and abetting can also "be inferred from the aider and abettor's knowledge that his cohort possesses a weapon." *Hopson v. Horton,* 838 F. App'x 147, 153–54 (6th Cir. 2020) (quoting *Hill v. Hofbauer,* 337 F.3d 706, 719–20 (6th Cir. 2003)); *see also Turner,* 213 Mich. App. at 571–73 (evidence showing that the defendant knew that his co-defendant had a gun "was sufficient

17

to permit a rational trier of fact to conclude beyond a reasonable doubt that [the defendant] was guilty of aiding and abetting first-degree felony murder"); *Carines,* 460 Mich. at 759–60.

Petitioner does not deny his participation in the underlying home invasion, nor does he dispute that a person's participation in a crime while knowing that an accomplice is armed with a firearm supplies the requisite intent to support a theory of aiding and abetting. Petitioner, instead, argues that there was insufficient evidence to show that he knew that co-defendant Franklin was armed with a firearm prior to the home invasion. Without this knowledge, Petitioner argues that there was insufficient evidence that he possessed the requisite intent to support his felony murder conviction.

The Michigan Court of Appeals rejected this claim as follows:

First, it is uncontested that Franklin killed the victim in the course of a home invasion. Next, defendant performed acts or gave encouragement that assisted in the commission of the crime. Defendant conversed with Franklin a few days before the killing about wanting to "[r]ob." Before the home invasion at 220 North Ingalls, defendant said, "What are you all standing around for? Let's go in," and it was defendant's self-proclaimed greed that brought them back to the victim's home a second time. Even more, defendant testified that he might have let the others into 220 North Ingalls by opening the back door after he went through a window. Therefore, based on

18

defendant's testimony alone, there was sufficient evidence for the jury to reasonably conclude that defendant's actions and words encouraged and helped Franklin to commit the crime. Third, there was sufficient evidence for the jury to infer that, under the circumstances of this case, murder was the natural and probable consequence of the intended offense. The jury could infer from the facts and circumstances that defendant knew Franklin had a gun. The prosecution presented evidence (a police interview) that when defendant asked Franklin, before the home invasion in question, if he had a gun, Franklin made movements indicating an affirmative answer. Given that defendant intended that Franklin assist him in committing home invasion of a residence that defendant had reason to know was occupied, all while defendant knew that Franklin was armed with a gun, the jury had sufficient evidence to convict defendant of felony murder.

*Jordan,* 2016 WL 5930006, at *2 (internal citations omitted).

The Michigan Court of Appeals' holding was reasonable, which precludes habeas relief. Although Petitioner claimed at trial that he did not know that Franklin had a gun with him on the night of the home invasion, Petitioner also admitted that he knew Franklin owned a .40-caliber Glock. (ECF No. 10-10, PageID.324.) Petitioner testified that Franklin often asked Petitioner to drive him to an apartment to pick up the gun when they were together. (*Id.*). Petitioner also informed the police during a recorded interview that was played for the jury that almost every time he picked up Franklin, he either had his gun or would

19

tell Petitioner to go to the apartment to pick it up. (*Id.* at PageID.332.) Petitioner also testified at trial that he asked Franklin whether or not he had a gun prior to the home invasion, and he admitted that Franklin said neither "yes" nor "no" in response. (*Id.* at PageID.328). Petitioner further admitted that he told the police in his prior interview that he assumed Franklin's nonverbal response to "mean that he had the gun on him." (*Id.* at PageID.332.) Although Petitioner attempted to qualify his answer by claiming the police "further pushed [him] to explain it," he agreed he did in fact make the statement. (*Id.*)

Given the facts and circumstances of this case, the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Michigan Court of Appeals reasonably determined that a rational jury could have found that the evidence supported a finding that Petitioner knew that Franklin had a gun before the home invasion, supporting a finding that Petitioner had the requisite intent to sustain his conviction for first-degree felony

murder under the aiding and abetting theory. *See, e.g*, *Hill*, 337 F.3d at 720. Petitioner is therefore not entitled to relief on his first claim.

### C.   Claim Two

Petitioner next contends that he is entitled to habeas relief because the judge gave the jury "faulty and confusing" felony murder and aiding and abetting instructions, which relieved the prosecution of its burden of proving the requisite intent to kill or to do great bodily harm. (ECF No. 13, PageID.1360; ECF No. 5, PageID.26.) However, this claim is procedurally defaulted.[2] And "where a straightforward analysis of settled state procedural default law is possible, [the Court] cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018)

### i.   *Petitioner's jury instruction claim is procedurally defaulted*

"A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d

---

[2] Since the Court rejects Claim Two based on procedural default, it need not reach the merits. However, the Court also finds Respondent's argument that "there is no merit to [Petitioner]'s jury instruction argument" is persuasive. (*See* ECF No. 9, PageID.93.)

399, 406 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1991)). If a petitioner procedurally defaults in state court, the "procedural default carries over to federal court and precludes habeas review of that claim in federal court." *Id*. Procedural default results when three elements are met: "(1) the [petitioner] broke a state procedural rule, (2) the state court enforced the rule, and (3) the procedural forfeiture was an adequate and independent ground for denying relief." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Here, the Court finds Petitioner meets all three elements. Thus, Petitioner's claim is procedurally defaulted.

The first prong of procedural default, which is that the petitioner broke a state procedural rule, is satisfied. The relevant state procedural rule is Michigan Court Rule 6.508(D)(3) and its requirement that a defendant show cause and prejudice for failing to raise the claim on direct appeal. Michigan Court Rule 6.508(D)(3) provides that a court "may not grant [post-conviction] relief to the defendant if the motion . . . alleges grounds for relief . . . which could have been raised" on direct appeal absent a showing of "good cause for the failure to raise such grounds" previously and "actual prejudice" resulting therefrom. If a petitioner fails

to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Here, Petitioner did not raise this claim for relief on direct state appeal, and did not show good cause, in violation of Michigan Court Rule 6.508(D)(3). (ECF No. 10-20, PageID.566–568.) He therefore "broke" a state procedural rule. (*Id.*)

The second prong, which is that the state court enforced the procedural rule, is also satisfied. The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citations and internal quotations omitted). If the last state-court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state-court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jordan,* 507 Mich. at 904. The Michigan Court of Appeals denied Petitioner's post-conviction appeal in a form order "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Jordan,* No. 351040 (Mich. Ct. App. Feb. 28, 2020) (ECF No. 10-22, PageID.836). These orders, however, did not refer to subsection (D)(3), nor did they mention Petitioner's failure to raise his second claim on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's second claim. *Id.*

In his opinion denying Petitioner's post-conviction motion, the trial judge cited to Michigan Court Rule 6.508(D)(3) and its requirement that a defendant is required to show good cause and actual prejudice for

24

failing to raise his claim in his initial appeal. (ECF No. 10-20, PageID.566). The judge stated that to overcome the bar for failing to raise this claim on his appeal of right, Petitioner was required to show good cause for failing to raise the claim. (*Id.*) Although Petitioner claimed that appellate counsel was ineffective for failing to raise this claim on his appeal of right, the judge found that Petitioner failed to show that counsel was ineffective and thus failed to show good cause for failing to raise the claim on his appeal of right. (*Id.* at PageID.566–567.) The judge further concluded that Petitioner failed to establish the actual prejudice standard contained in M.C.R. 6.508(D)(3). (*Id.* at PageID.567). The judge ultimately ruled that Petitioner "failed to overcome his burden of showing 'good cause' and 'actual prejudice'" so as to entitle him to post-conviction relief on the claim. (*Id.* at PageID.568). The state-court judge procedurally defaulted Petitioner based on provisions of Michigan Court Rule 6.508(D)(3).

Finally, the third prong is satisfied. The Sixth Circuit has repeatedly held that Michigan Court Rule 6.508(D)(3) is an adequate and independent ground for denying relief. *Benton*, 942 F.3d at 307; *Ivory v. Jackson,* 509 F.3d 284, 292–93 (6th Cir. 2007); *Reeves v. Campbell,* 708

F. App'x 230, 237–38 (6th Cir. 2017). Therefore, Petitioner's claim is procedurally defaulted.

   ii.   *Exceptions to review a procedurally defaulted claim are inapplicable*

A procedural default may be excused, and federal habeas review of the claims is not barred, if the petitioner shows cause for the default and prejudice from the error, or if a fundamental miscarriage of justice would otherwise result. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003). Neither exception applies here.

Where a petitioner does "not raise a claim of ineffective assistance of counsel, or any other reason, to excuse the default . . . he has forfeited the question of cause and prejudice." *Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020). Like the petitioner in *Rogers*, Petitioner has not shown a cause, such as attorney error, for his procedural default. (*See* ECF Nos. 1, 5, 13.) By failing to raise any claim or issue to excuse the procedural default, he has therefore "forfeited the question of cause and prejudice." *Rogers*, 821 F. App'x at 503.

The Court also finds that the fundamental miscarriage of justice exception does not apply. "The narrow exception for fundamental miscarriage of justice is reserved for the extraordinary case in which the

alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense." *Id*. at 504. To be credible, a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Petitioner has not presented any new evidence to support an assertion of innocence. Accordingly, this exception is inapplicable. The Court is precluded from reviewing Claim Two.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Petitioner's habeas claims lack merit and that he is not entitled to federal habeas relief. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus. (ECF No. 1.)

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court reaches the merits, the substantial

27

showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). When a court denies relief on procedural grounds, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Id*. Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

The Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** Petitioner leave to proceed in forma pauperis on appeal. This case is closed.

IT IS SO ORDERED.

Date: March 27, 2025        s/Judith E. Levy
    Ann Arbor, Michigan      JUDITH E. LEVY
                             United States District Judge

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2025.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager